**Clifford Flood, Appellee, v. Walter Bitzer et al., Trading as Bitzer Motor Company, Appellants.**

Opinion filed March 2, 1942.

JOHNSON & JOHNSON, of Belleville, for appellants.

MCGLYNN & MCGLYNN, of East St. Louis, for appellee; HENRY G. WALKER, of East St. Louis, of counsel.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an action at law instituted in the circuit court of St. Clair county by plaintiff appellee, Clifford

Flood, to recover damages for personal injuries suffered by him, resulting from a collision between his automobile and an automobile owned by Joseph Frerker, an employee of Walter Bitzer, Earl Bitzer, Jesse Bitzer, LeRoy Bitzer, doing business as Bitzer Motor Company, defendants appellants, on November 26, 1939. For convenience the parties will hereinafter in this opinion be referred to as they appeared in the trial court. There was a jury trial, verdict of $4,000, in favor of plaintiff, upon which judgment was entered. Defendants prosecute their appeal to this court.

The record discloses that Joseph Frerker, was employed by defendants, as a salesman of automobile parts and equipment to various dealers, throughout certain territory assigned to him. The accident which is the subject matter of this litigation occurred on Sunday, November 26, 1939, between 1 and 2 o'clock in the afternoon on U. S. Route No. 50, between O'Fallon and Lebanon, while Wilma Privette, then the fiancee, now the wife of Joseph Frerker, was driving the Frerker automobile. As a result of a collision between the Flood car and the car driven by Wilma Privette, plaintiff was thrown out of his automobile and injured. Inasmuch as defendants do not controvert the question of negligence in the operation of the car owned by Frerker and driven by Miss Privette, the evidence introduced at the trial tending to establish negligence, need not be stated. The question of excessiveness of the verdict is not raised by defendants.

It is contended by counsel for defendants that Joseph Frerker, at the time and place of the collision, was not acting within the scope of his authority; that therefore, defendants were not liable for his negligent acts. It is their theory that while Frerker had made delivery of certain parts to a customer of defendants at Fairview, and contemplated delivery of more to another customer at Trenton, that this was merely incidental—the real purpose of the trip being for purposes

of his own, namely a visit to his parents at Germantown.

It is the general rule that the party injured by the negligence of another must seek his remedy against the person who caused the injury. To this rule well-established exceptions arise where the relations of master and servant or principal and agent is shown to exist. In those cases the negligence of the servant or agent is imputable to the master or principal. If, however, the case is to be brought within the exception to the general rule it is necessary to show that such relationship exists between the person at fault and the one specifically charged with the result of the wrong. Such relationship must exist at the time and in respect to the particular transaction out of which the injury arose. *Mosby v. Kimball*, 345 Ill. 420. The right to control the manner of doing the work is of principal importance in the determination of the question whether the worker is an employee or an independent contractor. *Decatur Railway & Light Co. v. Industrial Board*, 276 Ill. 472. The test is the right to control and not the fact of whether actual interference with the method of doing the work is shown by the evidence. If the person for whom the work is being done retains the right to control the manner in which the work is to be done the relation of employer and employee exists. *Meredosia Levee & Drainage Dist. v. Industrial Commission*, 285 Ill. 68.

In the case at bar the evidence showed that Frerker was a salesman for defendants, that he sold and delivered parts and equipment throughout certain territory assigned to him. He was the owner of the automobile involved in the accident. Defendants paid him a monthly salary, paid him for his gas and oil and a certain amount each month for depreciation on his car, amounting to about $25 a month. They also gave him an allowance for repairs.

Day Bryson, a witness for plaintiff, testified that he was parts manager for Brefelt Chevrolet Company at Trenton, Illinois; that a few days before November 26, 1939, he ordered parts from Frerker to be delivered Monday morning, so that the mechanics could put the parts in automobiles when they started to work, which was at seven o'clock in the morning. Plaintiff's Exhibit 1, the second page of which was an order written by Frerker, on Saturday, November 25, 1939, the day before the accident, for the Brefelt Company at Trenton, was marked, "Joe Del. Sunday sure." Jerome Kidd, employed by defendant as manager, testified that he had immediate supervision of Frerker, that he knew that Frerker's parents lived at Germantown, and that he, Frerker, visited them on Sundays. He also testified that he knew of Frerker making deliveries on Sundays to the Brefelt Company and to other customers.

Jess Bitzer, one of defendants, testified that if Frerker did deliver the parts on Sunday, he did it for the defendant company and if he had not delivered them, defendants would have delivered them in some other way. As matter of fact these parts were afterward delivered to the Brefelt Company at Trenton. Frerker testified that he had obtained the order for the parts from the Brefelt Company a few days before the accident, and on the Sunday morning in question picked up said parts at the place of business of defendants. He intended visiting his parents at Germantown and took along as passengers in his car, Wilma Privette and another friend. He delivered some parts at Meyer's Filling Station at Fairview on U. S. Route No. 50. After leaving there, he asked Miss Privette to drive the car, which she did and was engaged in so driving at the time of the accident. Frerker testified, "I believe I had a part in there (the car) to be dropped off. I was going to drop it off at Brefelt Chevrolet."

It was further established in the record, that on U. S. Route No. 50, you go through French Village, O'Fallon, Lebanon, Trenton, Aviston and Breese and that from Breese, one could go down to Germantown. It would seem a logical conclusion from this testimony that it was the intent and purpose of Frerker, in spite of his statement that this trip was merely a matter of his going to visit his parents, and dropping off the parts as a friendly gesture, he was on his way to Trenton, at the time of the accident, to deliver these parts, in furtherance of the business of the defendants, and within the scope of his employment.

It is contended by counsel for defendants that Frerker was free to come and go as he pleased and that defendants exercised no control over his movements and inasmuch as he was not specifically directed by them to deliver these parts on Sunday, they should not be held liable. In the case of *Hartley v. Red Ball Transit Co.*, 344 Ill. 534, while the facts are dissimilar, the rule is laid down very clearly with reference to the relationship of master and servant. There the court said, at page 539, "The test of relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent." In the instant case, the record as a whole shows a right of control by defendants. It was a regular business and duty of Frerker to take orders and deliver parts. He had a regular route and territory laid out for him by his employers. He was under the immediate supervision of Kidd, the manager for defendants. It was not necessary for liability that defendants specifically direct him to deliver, or that they knew of it. An employer is liable for the negligent act of his servant done within the scope of his authority, notwithstanding the fact that the employer had no knowledge of the particular act and regardless of the fact that the employee had no duty to perform

the act. *Darner v. Colby,* 375 Ill. 558; 39 C. J. 1284, Master and Servant, Section 1473.

The recent case of *Katsinas v. Colgate-Palmolive-Peet Co.,* 299 Ill. App. 347, was very similar on the facts. Plaintiff in that case sued upon the theory that defendant was liable for the negligence of its agent, George Hoffman. The evidence showed that Hoffman was employed by defendant as a salesman, that it was necessary for him to have a car, that he acted under the supervision of a supervisor of sales, that while there was a conflict in the evidence as to where Hoffman was on the evening and night of the accident, it was shown that he called upon certain merchants in three different towns between the hours of 7 and 9 o'clock on the evening of the accident in question, which towns were from 20 to 40 miles distant from Champaign, where the accident happened. Hoffman was required to cover territory as directed, but without apparent interference by his employer.

There the court held that where the work was not of a character requiring a great deal of supervision, failure to supervise does not change the relationship of employer and employee and that the lower court did not err in submitting to the jury the question as to whether or not Hoffman was an independent contractor or acting as agent and servant of defendant at the time of the injury.

It is claimed further that defendants should not be liable for the reason that Frerker claimed that he was making the trip on his own time and for his own pleasure, and was only incidentally making delivery to a customer. The fact that the servant is combining his own business with that of the master, does not necessarily relieve the latter from liability. *Kennedy-VanSaun Manufacturing & Engineering Corp. v. Industrial Commission,* 355 Ill. 519; *Irwin-Neisler & Co. v. Industrial Commission,* 346 Ill. 89; *Carl Corper Brewing & Malting Co. v. Huggins,* 96 Ill. App. 144; *East*

*St. Louis Connecting Ry Co. v. Reames,* 75 Ill. App. 28. The jury would be justified in believing that Frerker had just delivered parts to one customer and was on his way to deliver some to another. It is immaterial whether or not the delivery of the auto parts to Trenton was incidental to the main purpose of the trip, because the evidence shows that at the time the injury took place Frerker was engaged not on his own but on defendant's business and within the scope of his employment.

One remaining collateral question is raised by counsel for defendant, and that is, that the tort was committed not by Frerker but by Wilma Privette. The record shows she was driving his car by his express invitation, at his direction and in his presence. The evidence shows that at the time of the collision, apparently realizing his responsibility, Frerker, who was riding in the front seat with Miss Privette, took hold of the steering wheel. As a general proposition of law the owner of a motor vehicle is ordinarily held liable for the negligence of one who is not in his employ but who is driving his car with the knowledge and consent and in the presence of his agent or employee and upon his business. *Cook v. Connelly Chevrolet Co.,* 261 Ill. App. 242. In this case the act of Miss Privette was the act of Frerker, who in turn was acting for his master, in the course of his employment. The court did not err in refusing to direct a verdict for defendant and in denying motion for judgment notwithstanding verdict.

Complaint is made that the court erred in refusing five instructions offered by defendants. Instructions 1, 2 and 3 did not correctly state the law and were properly refused. The fourth and fifth instructions were misleading and were properly refused. In other instructions offered by the court and given to the jury, the principle of law embodying the doctrine of master and servant and the duty of plaintiff to show that the servant or agent was acting within the scope of his em-

ployment at the time of the injury complained of, were fully covered. We believe the jury were properly and fully instructed as to the law applicable to the facts in this case.

Not finding any substantial error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*