Elsie Springer, Executrix of Will of James Eugene Springer, Deceased, Appellee, v. Illinois Transit Lines, Inc., Appellant.

Gen. No. 9,359.

Opinion filed February 24, 1943. Supplemental opinion filed and rehearing denied May 4, 1943.

GRIFFIN, WINNING, LINDNER, NEWKIRK & JONES, of Springfield, for appellant; C. TERRY LINDNER and MONTGOMERY S. WINNING, both of Springfield, of counsel.

MICHAEL ECKSTEIN, of Springfield, for appellee.

MR. JUSTICE DADY delivered the opinion of the court. In a trial without a jury, the plaintiff, Elsie Springer, as executrix of the estate of her deceased

husband, James E. Springer, recovered a judgment against the defendant, Illinois Transit Lines, Inc., for the sum of $10,495, the court stating that $10,000 thereof was for the alleged wrongful death of the deceased, and $495 for damages to the truck which decedent was driving at the time of his death.

The defendant brings this appeal.

No question of pleading is involved.

The evidence is undisputed.

The evidence shows that the injuries which caused the death of the decedent were received by him on a public highway while he was delivering to a customer, by means of a tank truck, merchandise received by him from a bulk station of the Sangamon Farmers' Oil Company, a corporation. Such evidence also shows that such company, hereafter referred to as "Oil Company," and the defendant were at all of the times in question subject to and bound by the provisions of the Illinois Workmen's Compensation Act.

The only contention of the defendant on this appeal is that the decedent at the time of receiving such injuries was an employee of the Oil Company, as distinguished from an independent contractor, and that therefore the plaintiff cannot recover. It is conceded by both sides that if the decedent was at such time such an employee then there can be no recovery for the personal injuries because of the provisions of the Compensation Act, but that if he was not an employee and only an independent contractor then the judgment should stand.

The Oil Company was engaged in the business of selling petroleum products, such as gasoline, oil, etc., in Sangamon county, Illinois, where it had five bulk stations. Springer was at the time of receiving the injuries and for several years immediately prior thereto had been a tank truck salesman,—that is he sold and distributed to customers by means of a tank truck the products of the Oil Company. Apparently he had no

other occupation. There was no written contract of employment between him and the Oil Company. He could be dismissed by the Oil Company at any time, and he in turn could also discontinue the relationship at any time. He was not required to come to or report for work at any particular place of business of the Oil Company at any particular time, but he could come or leave at his will.

The truck belonged to Springer. The tank and other accessories on the truck belonged to the Oil Company. The name "James E. Springer" appeared on the door of the cab, and the name of the Oil Company appeared on the tank and on the cab above the windshield. Springer was paid no salary, but received from the Oil Company only a straight commission on the merchandise he sold or delivered. This commission was paid him on each Monday. Of such commission 40 per cent was allowed him for the use of the truck and 60 per cent for his work. The 40 per cent was the amount allowed him by the revenue department in computing his income tax. He paid all of his business expenses out of his own funds. In doing such work he sometimes had helpers, whom he selected and hired and discharged at his will, and such helpers were paid their compensation by Springer from his own funds.

The Oil Company had assigned to Springer certain territory in which he sold and delivered such merchandise, but Springer was permitted to sell in other territory if he made arrangements with the regular tank truck driver in such other territory. The Oil Company had several other tank truck drivers doing similar work under similar circumstances and conditions.

The procedure was that Springer would start out from his home with his tank truck and drive the truck to one of such bulk stations where, without the help of any attendant, he would take on a load of merchandise. He would then make out and leave at the bulk

station a ticket showing the quantity of merchandise which he took out. He might take on four or five of such loads in a single day, depending on the volume of business. After loading the truck Springer would sell and distribute the merchandise in his territory. He had nothing to do with fixing the prices at which the merchandise was sold, but he sold such merchandise at prices fixed and designated to him by the Oil Company. The Oil Company frequently received orders direct from customers which were turned over to Springer and filled by him. Springer solicited customers either on his own initiative or with the help of a representative of the Oil Company. All the merchandise that he took on his truck was charged to him by the Oil Company, not in dollars and cents on the day he took it, but in quantity. The Oil Company furnished him with printed sales tickets which he used in making sales and deliveries. The printed sales tickets, with blanks to be filled in, were headed ''Bought of Sangamon County Farmers' Oil Company,'' then followed ''Customer's name,'' followed by a blank space; then an itemized list of the merchandise, followed by blank spaces for the amounts sold or delivered and the prices. There was printed on such tickets ''Drivers must account for all tickets,—spoiled tickets must be returned with delivery reports''; also the words, ''Goods received by ——————, Purchaser.'' There was at the bottom the words, ''Received Payment, Sangamon Oil Company, By ———, Agent.'' On making a delivery to a customer Springer would insert in the blank spaces the name of the customer, the date of the sale, the quantity and the price. If the customer paid cash Springer signed the receipt of payment and delivered the original copy to the customer, and thereafter returned a copy to the Oil Company; if the customer did not pay cash, the customer signed the part of the ticket providing for acknowledgment of receipt of the goods, and he was then given a

copy, and a copy was delivered by Springer to the Oil Company.

Each day Springer was supposed to make and send or deliver to the Oil Company a daily report of his sales, with copies of sales tickets, and to turn in to the Oil Company his cash receipts. This he generally did each day, but sometimes three or four of such reports were turned in at one time. The daily report showed what actually happened to the products obtained at the bulk station. Springer was not permitted to keep his commissions out of his receipts, but had to turn in all receipts to the Oil Company. If the unpaid accounts were not paid within 30 days, Springer then paid them to the Oil Company out of his own funds, or they were charged by the Oil Company against his earned and unpaid commissions. In a few instances the Oil Company assumed the credit risk without charging the same against Springer, but these were exceptions. At the end of each month the Oil Company sent out on its bill heads bills to the customers for unpaid goods, and if payments were made thereon they were credited to the account of Springer.

The Oil Company carried, and paid for from its own funds, compensation insurance on all of its tank truck drivers, including Springer, but such insurance did not cover the helpers hired by Springer. Such helpers were covered by compensation insurance carried and paid for by Springer from his own funds. Springer carried liability insurance on his truck and paid therefor from his own funds.

The Oil Company paid a social security tax with respect to the commissions paid Springer and deducted same from his commissions, to which procedure Springer made no objection.

The Oil Company carried under its name an advertisement in two telephone books covering part of the territory assigned to Springer, which advertisements listed Springer as the representative of the Oil Company in such territory.

The foregoing is a fair resumé of the facts. The question for us to determine is whether these facts show Springer to have been an independent contractor or an employee of the Oil Company.

In arguing that the deceased was an employee, the defendant contends that the customers to whom Springer sold merchandise were customers of the Oil Company and not of Springer. If Springer was an independent contractor the customers could be considered as his customers. If on the other hand he was only an employee, then the company would be justified in claiming patrons to be their customers and not Springer's.

Defendant also attaches some significance to the fact that the Oil Company carried compensation insurance covering Springer. However, the evidence also shows that the Oil Company did not carry such insurance on Springer's helpers, and that Springer himself paid for and carried such insurance on his helpers. All of the compensation insurance may be considered and in fact was a matter of protection, and we do not consider that the carrying of this insurance by the company on Springer was conclusive as to the question of Springer's status.

After the present suit was filed plaintiff filed a petition with the State industrial commission in which it was alleged, among other things, that the decedent was injured by an accident "arising out of and in the course of his employment" by the Oil Company. The petition prayed for an award from the industrial commission. The defendant complains of the action of the trial court in excluding this evidence. In our opinion the evidence was properly excluded as immaterial. The allegation in such petition as to employment did not tend to establish or change the actual status of the decedent at the time he received the injuries.

In a case of this nature we believe it necessary to consider all of the evidentiary facts without singling out any isolated facts or circumstances before coming

to a conclusion. By reason of variations in facts in particular cases passed on by courts of review, it is difficult to cite any exact precedent. The case which we consider most nearly in point on the question to be decided by us is the recent case of *Postal Telegraph Sales Corp. v. Industrial Commission,* 377 Ill. 523. In that case one Lewis was injured while employed in selling clocks on a commission basis. The details of his employment closely resembled those of Springer in the present case. Lewis' first employment was on a commission basis entirely and he was to pay all his expenses of transportation. The clocks were delivered to him but did not belong to him and he did not pay for them. Later he was appointed a supervisor and was still paid a commission and still paid his expenses. He then had the right to and did appoint subsalesmen and received an additional commission on their sales. He had the right to discharge such subsalesmen. He worked independently of supervision and ultimately participated in the earnings of the subsalesmen. The company defined his territory and he was made responsible for any property delivered to him. The company gave him no directions as to how to sell or to whom.

Upon the basis of these facts the court held that Lewis was an independent contractor and not an employee. In arriving at this conclusion the court said at pages 526 and 527 of the opinion: "In a given case, under the facts, whether a person is an employee or an independent contractor is sometimes difficult to determine. This results from the fact that elements pertaining to both relationships may occur without being determinative of the relationship, and no specific rule has been adopted by this court applicable to the facts of all cases. An independent contractor has been defined as one who renders service in the course of the occupation, and represents the will of the person for whom the work is done only with respect to the result,

and not the means by which that result is accomplished. . . . It has also been held that if the person for whom the service has been rendered retains the right to control the details of the work and the method or manner of its performance the relation of employer and employee exists. . . . The right to control the manner of doing the work, not the actual control, is an important if not the principal consideration which determines whether the worker is an employee or an independent contractor. . . . Some of the earlier cases define an independent contractor as one who undertakes to produce a given result without in any way being controlled as to the method by which he attains that result. . . . So, also, it has been held that if in the performance of the work he is not under the control of the employer he is an independent contractor.'' In such case three Appellate Court cases are cited, each of which holds that the relationship there shown was that of independent contractor and not of employee. (*Meece v. Holland Furnace Co.,* 269 Ill. App. 164; *Burster v. National Refining Co.,* 274 Ill. App. 104; *Trust v. Chicago Motor Club,* 276 Ill. App. 289.)

Defendant cites a number of cases which we believe are distinguishable, particularly on the facts, from the case at bar. In *Katsinas v. Colgate-Palmolive-Peet Co.,* 299 Ill. App. 347, the court merely held that the question of whether a salesman was an employee or independent contractor was properly submitted to the jury as a question of fact. In *Flood v. Bitzer,* 313 Ill. App. 359, it was not contended that the salesman was not a regular employee, nor was it contended that he was an independent contractor, but the question was whether at the time of the accident such salesman was acting within the scope of his employment. In *Darner v. Colby,* 375 Ill. 558, Colby and the Johnson Oil Refining Company were sued for personal injuries. Colby at the time of the accident was driving a truck. The

plaintiff contended that Colby was an employee of the refining company, while the company claimed that Colby was not an employee but merely an independent contractor. The Supreme Court held that Colby was an employee and not an independent contractor. It will be noted that the contract of employment between Colby and the company stated that ''In accepting employment with the Johnson Oil Refining Company, . . . as its local manager at its bulk station,'' and that by such contract Colby agreed to perform the duties in the course of ''my employment.'' In *Kehrer v. Industrial Commission*, 365 Ill. 378, the court merely held that the question whether the injured workman was an employee, was a question for the determination of the industrial commission, there being evidence tending to show such fact.

Defendant makes the further contention that the payment by the Oil Company of a social security tax on Springer's earnings shows that Springer was an employee and not an independent contractor. The case of *Postal Telegraph Sales Corp. v. Industrial Commission, supra,* expressly holds that the payment of such a tax is not conclusive in determining the status of the person for whose benefit the tax is paid.

The evidence in the case before us shows these salient facts: Springer's territory was defined in advance. He had the right to hire and discharge his helpers at will. When he had loaded merchandise on his truck such merchandise was immediately charged to him and as a matter of fact thereupon became and thereafter was his merchandise. He could sell such merchandise anywhere and to anyone in his territory. No directions were given to him as to how he was to sell or to whom. He did not report for work to anyone or at any time, but his time was his own so long as he produced results. He received no salary but only a commission depending upon his accomplishments. He was, in fact, engaged in his own business and paid his

own expenses. In our opinion the cumulative effect of this evidence was sufficient to justify the trial court in finding as it did, in effect, that Springer was an independent contractor and not an employee of the Oil Company.

For the reasons indicated the judgment of the trial court is affirmed.

*Affirmed.*

## SUPPLEMENTAL OPINION.

PER CURIAM. A petition for rehearing has been filed calling our attention especially to the recent opinion in *Murrelle v. Industrial Commission,* 382 Ill. 128.

In the *Murrelle* case the liability of the defendant company depended on whether Murrelle, the decedent, was an employee or an independent contractor. The Industrial Commission found he was an employee and accordingly made an award in favor of the widow and against the company. On appeal, the Supreme Court affirmed such finding and award. In the *Murrelle* case some of the facts material to the particular issue were quite similar and some not similar to the facts in the instant case. It will be noted that in the *Murrelle* case the Supreme Court said that ". . . the existence of the right of control . . . is the determining factor in deciding whether deceased was an employee or an independent contractor," and such opinion states that a former sales manager of the defendant company testified to having hired the deceased, and further testified (apparently without objection) that the deceased was under his direction and control as such sales manager, and that he had the right to control deceased's work. It will also be noted that the opinion states that the president of such company, when called as an adverse witness by the widow, testified that the decedent "was employed" by such company, and that when such president was thereafter called as a wit-

ness for the company the attorney for the company stated of record that the sole purpose of his calling such witness was to show the nature and scope of decedent's employment by such company. No such evidence or admission appears in the record in the instant case.

In the *Murrelle* case the question of employment was a disputed question of fact. The Supreme Court there said: "We have repeatedly said the findings of the Industrial Commission on contested-fact issues will not be disturbed unless manifestly against the weight of the evidence. . . . It is not for this court to weigh the evidence." After reviewing the facts, the court said: "In the light of the entire record we are of the opinion that the Commission was clearly justified in finding that Murrelle was an employee of Organ Brothers Company, . . . within the Workmen's Compensation Act."

In the instant case the question of employment of Springer was also a disputed question of fact. It is impossible to lay down a hard and fast general rule by which the status of men can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and, ordinarily, no one feature of the relation is determinative but all must be considered together (*Bristol & Gale Co. v. Industrial Commission*, 292 Ill. 16).

In the instant case we are still of the opinion that the trial court was justified in finding that Springer was an independent contractor and not an employee, and we do not consider the *Murrelle* case to be in conflict with this opinion.

*The petition for a rehearing is denied.*